The People of the State of New York ex'rel. The Groton Savings Bank, Appellant, *v.* Edward P. Barker et al., Commissioners of Taxes and Assessments of the City of New York, Respondents.

1. Tax — Savings Banks — Surplus. When the surplus of a savings bank, under the statutes of its domicile, belongs in equity to, and is subject to distribution among, its depositors, it is to be deemed a liability as well as an asset, and comes within the principle that deposits in savings banks are debts that can be used to offset or extinguish assessments against the bank upon personal property.

2. Foreign Savings Bank — Tax on Bank Shares. For the purposes of local taxation in this state of a savings bank of another state, upon stock of banks in this state held by it (L. 1882, ch. 409, § 312), the question whether its surplus belongs in equity to its depositors, so as to constitute a debt or liability available as an offset to the assessment, depends upon the statutory provisions of its own state.

3. Connecticut Savings Bank. When, under the statutes of its domicile regulating the operations of a savings bank and governing its obligations and duties (as, under the statutes of Connecticut governing the Groton Savings Bank), its surplus or profits from investments must, after reaching a certain amount and at certain times, be distributed to the depositors, such surplus belongs in equity to the depositors and is within the purview of the statute (L. 1857, ch. 456, § 4) exempting deposits in savings banks from taxation against the bank as personal property.

*People ex rel. Groton Sav. Bank* v. *Barker*, 19 App. Div. 64, reversed.

(Argued October 4, 1897; decided October 12, 1897.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 18, 1897, which reversed an order of Special Term vacating an assessment upon the stock of certain banks in the city of New York, held by the relator, for the purposes of taxation for the year 1894.

The facts, so far as material, are stated in the opinion.

*Esek Cowen* for appellant. The court below erred in reversing the order of the Special Term and affirming the assessment, because the money represented by these shares of stock was "due to depositors," and, therefore, exempt from

taxation. (L. 1857, ch. 456.) The relator having made affidavit at the proper time that its debts were at least $701,512.23, and had not been used to reduce its taxation on any other personal property, the commissioners should have struck the whole assessment from the roll, and the learned Appellate Division erred in affirming such assessment. (Gen. Laws, ch. 24, § 6a; U. S. R. S. §§ 5214, 5219; *People* v. *Weaver*, 100 U. S. 539; L. 1882, ch. 409, § 312.)

*James M. Ward* and *Francis M. Scott* for respondents. An exemption of property accorded to the appellant by the statutes of Connecticut would not avail to exempt such property in the state of New York. (*Catlin* v. *Trustees of Trinity College*, 113 N. Y. 142; *People ex rel.* v. *Coleman*, 135 N. Y. 231.) Savings banks are not wholly exempt from taxation under the laws of the state of New York. (L. 1857, ch. 456, § 4; L. 1892, ch. 202.) Even if a savings bank, as such, were not taxable, under the laws of this state, on its deposits and accumulations, it would still be liable to taxation as a stockholder in a national bank, without regard to the ownership of the shares. (*Bank of Redemption* v. *Boston*, 125 U. S. 60; *People ex rel.* v. *Coleman*, 135 N. Y. 231.) The original assessment against appellant was in strict accordance with law. (1 R. S. 387, § 51; U. S. R. S. § 312; L. 1882, ch. 409, §§ 312, 313; L. 1882, ch. 410, § 818; L. 1892, ch. 714.) The assessment and taxation of the appellant's bank stock was not made at a greater rate than that applied to other moneyed capital in the hands of individual citizens of this state. (U. S. R. S. § 5219; *Mercantile Bank* v. *New York*, 121 U. S. 138; *Palmer* v. *McMahon*, 133 U. S. 660; *W. N. Bank* v. *Parker*, 41 Fed. Rep. 402; L. 1882, ch. 409, §§ 312, 325, 326.) Under the construction placed by the courts upon the provision of the Revised Statutes of the state of Connecticut relating to the relations between the savings banks in that state and their depositors, it is quite plain that the relation of debtor and creditor does not exist, and that the appellant is not entitled to deduct from its gross assets as a liability the

amount of its deposits before the gross surplus is ascertained. (*Eaves* v. *P. S. Bank*, 27 Conn. 229 ; *Savings Bank of New London* v. *Town of New London*, 10 Conn. 111 ; *Coite* v. *Society of Savings*, 32 Conn. 173 ; *Green* v. *S. M. Co.*, 52 Conn. 330 ; *Price* v. *Society for Savings*, 64 Conn. 362.) The determination of the commissioners now under review in this proceeding is entirely within the lines indicated for their direction in assessing the shares of stock owned by a Connecticut savings bank in national banking associations in this city in the case of *People ex rel.* v. *Coleman* (135 N. Y. 231). (*People ex rel.* v. *Coleman*, 45 N. Y. S. R. 136.)

O'Brien, J.   The defendants, as commissioners of taxes and assessments in the city of New York, in the year 1894, assessed the relator, a savings bank, incorporated and existing under the laws of the state of Connecticut, in the sum of $43,000 as a part of its surplus invested in bank stocks in the city of New York.   The court at Special Term reversed the action of the assessors and set aside the assessment as unauthorized.   The controversy in that court seems to have turned upon the question whether the deposits in savings banks were debts, within the meaning of the statute, which can be offset against assessments for personal property.   It was held that such deposits were debts, and that as they exceeded the assessment, the so-called surplus of the relator was not taxable. But upon an appeal by the defendants to the Appellate Division, the order of the Special Term was reversed and the assessment reinstated.   The learned Appellate Division agreed with the Special Term that deposits in savings banks were debts that could be used to offset or extinguish assessments upon personal property ; but that this principle did not apply to any surplus existing after all the liabilities and obligations of the bank had been deducted from the assets. It was supposed that the case of *People ex rel. Savings Bank of New London* v. *Coleman* (135 N. Y. 231) sustained this conclusion ; and that case certainly does, if the facts in this case are the same.   In that case Judge Earl said : " The exemption was

only to the extent of the deposits due to depositors. The surplus held by savings banks not being due to depositors, and, therefore, not taxable against them, was left where it was before, liable to taxation against the banks." The result in that case very evidently proceeded upon the assumption that the surplus of a savings institution is not in any sense an obligation due to the depositors. So far as appears, there was nothing in that case to show that the depositors had any interest whatever in the surplus, or that they could ever be entitled to any part of it. It was treated as a part of the property of the corporation itself, quite independent of any interest in the depositors. By the fourth section of chapter 456 of the Laws of 1857, "the deposits in any bank for savings which are due to depositors, and the accumulations in any life insurance company organized under the laws of this state, so far as the said accumulations are held for the exclusive benefit of the assured, shall not be liable to taxation, other than the real estate and stocks which may be owned by such bank or company, and which are now liable to taxation under the laws of the state." Under this statute it was held in the case referred to, that the deposits in savings banks were exempt from taxation against the bank. The bank stock of the relator was undoubtedly subject to taxation, but the assessment was subject to be offset by the debts and liabilities which it owed to depositors; and the question here is whether the surplus of the relator was such a debt or obligation. It would seem that in the decision of the above case the court assumed that depositors in savings banks have no interest in the surplus, and, as before stated, there was nothing in the record to the contrary, and, indeed, the question was not raised in that case. The facts in this case, however, are quite different, since it appears by the legislative charter itself under which the relator exists as a corporation, that the income or profit which it derives from investments is to be divided among the persons making the deposits, their executors or administrators, and in just proportion, with such reasonable deduction as may be chargeable thereon. It also appears by

the general statute of Connecticut regulating the operations of savings banks, that the net income of any savings bank in excess of a sum equal to one-eighth of one per cent of its deposits actually earned during the six months last preceding, and no more, may be semi-annually divided among the depositors ; but that no such dividend shall be made until the surplus shall have accumulated to an amount equal to three per cent of its deposits ; that such accumulation shall be kept as a contingent fund to the extent of ten per cent of its deposits, and any surplus beyond that shall be divided among the depositors entitled to such dividends, in sums of not less than one per cent of its deposits.    It is apparent from these statutes that the profits of savings banks, under the laws which governed the obligations and duties of this relator, belong in equity to the depositors and are a part of the deposits in the same sense that the stipulated interest is, or may be.    It is true that they are not payable at the same time, or in the same way, and that they may be held by the bank as a fund until they have reached the specified amount.  . This is for the purpose of security to the depositors against unforeseen contingencies. But in the end, under the general spirit and purpose of the statutes, the depositors, their personal representatives or assigns, would be entitled, in equity, to the pecuniary benefits of such accumulated profits.    The so-called surplus is, therefore, within the equity of the statute exempting depositors of savings banks from taxation.    This surplus fund is a debt, or obligation, due to depositors, just as much as the accumulated interest stipulated to be paid to them.    There is no more reason, under these circumstances, for taxing the surplus fund of a savings bank than the accumulations of a life insurance company held for the exclusive benefit of the assured. The exemption in both cases is expressed in the same section of the statute, and in the same sentence ; and in ascertaining the real condition of a savings bank for the purpose of such taxation as was made in this case, the surplus of the relator should not only have been included among its assets, but among its liabilities and obligations as well.    The learned

Appellate Division treated it as one of the relator's assets, but did not include it in its liabilities, and it was by this method of computation that the so-called surplus was made out. The court refused to treat it as an obligation due to depositors and available to the relator as an offset against the assessment upon its bank stock. It was assumed that the relator's surplus was not an obligation due or to become due, in any sense, to depositors, and this assumption was no doubt based upon the remark in the case above cited, but which was not involved in the case.

The obligations of the relator to its depositors must be ascertained from the provisions of the law of Connecticut, since it is under that law that it was organized, and that its contracts and obligations must be measured. We are not concerned with the question whether, under the laws of this state in regard to savings banks, such surplus is taxable or not. There are provisions in the statutes of this state which seem to indicate that surplus profits must, after reaching a certain amount and at certain times, be distributed to depositors. It is not, however, necessary in this case to consider the scope or meaning of these provisions. But we do not see how, under the language of the Connecticut statutes, the relator's surplus, as it is called, can be treated otherwise than as an obligation due to depositors, and, hence, as a part of the deposits, in ascertaining the liability of the relator to taxation upon the stock in question.

For these reasons we think that the order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs to the relator in all the courts.

All concur.

Order reversed.