PAUL HELLINGER, Respondent, *v.* GEORGE H. GRANT, Appellant.

(County Court, Niagara County, November, 1910.)

Evidence — Parol evidence — The general rule and its applications — Instruments incompletely representing intention of parties.

> Where the written memorandum of what purports upon its face to be a sale of illustrated cards, but is in reality a contract for the printing of cards advertising a business, contains nothing to indicate the printed matter and illustrations that are to appear upon the cards, the memorandum is not a complete contract, and to render it intelligible resort must be had to oral proof.

> Where, in an action by the person who was to furnish the cards to recover the price, the plaintiff offers proof showing the nature of the business to be advertised and the matter to be printed on the cards, the defendant is entitled to offer proof upon the same subject; and the exclusion of such proof offered by the defendant is reversible error.

APPEAL by defendant from a judgment entered against him in justice's court.

A. Edmund Lee, for appellant.

M. C. Holley, for respondent.

HICKEY, J.  This is an appeal by the defendant from a judgment entered against him in justice's court. The contract upon which the action was brought is as follows:

" POSTAL SERVICE CO.,     ANY ARRANGEMENT MADE WITH
      320 Broadway,           THE  SALESMAN  MUST  BE
       New York.            SPECIFIED PLAINLY ON THIS
                             ORDER.

" BOUGHT from POSTAL SERVICE CO., twenty-six Sets of Post Cards, one hundred (100) in each set, total twenty-six hundred Illustrated and Printed on Colored Card stock for the sum of $22.50.

" SIZE OF CARD to be as specified below.

" . . . . . . . . . . . . . . . . signature cut of style $5 to be furnished by POSTAL SERVICE Co. without extra charge.

" TERM OF SALE : Five Dollars on delivery of goods and Five Dollars each and every month thereafter until paid. In default of any of said payments, the whole amount remaining unpaid to become forthwith due and payable.

" Goods to be shipped within twenty days from date hereof, CHARGES PREPAID.

— 5½ —

| | |
|---|---|
| White | 850 |
| Blue | 850 |
| Canary | 850 |
| Green | 850 |
| Salmon | 850 |
| Manila | 950 |

This is the size of Card, Style and Number of each Color Purchased.

" We agree not to sell Post Cards to any one else in your line within Lockport, N. Y., for one year.

G. W. GRANT          Name

91 Main St., Lockport     Address

" Date *Nov.* 18, 1909     POSTAL SERVICE Co.

Per A. R. MIRANDER, *Salesman.*

" References :

" . . . . . . . . . . . . . . . . . . . .

" . . . . . . . . . . . . . . . . . . . .

" IT IS AGREED THAT THE POSTAL SERVICE Co. WILL NOT BE RESPONSIBLE FOR ANY MATTER NOT EMBODIED IN WRITING HEREIN."

The complaint alleges that plaintiff entered into a certain contract in writing with defendant " whereby the plaintiff undertook to print and deliver to the defendant " certain post cards for which defendant agreed to pay plaintiff the sum of twenty-two dollars fifty cents. According to this complaint it appears that plaintiff was to place printed matter of some kind on the cards which he was to furnish

to defendant; but an inspection of the contract itself which is set forth above does not seem to contemplate this. On the contrary, it appears to be a sale of cards already *illustrated* and *printed* and ready for delivery. The contract itself conveys the idea of a sale by sample. Of course the word " sample " does not appear in the contract but, as it imports a present sale of " illustrated " and " printed " cards and is silent respecting the character of the illustrations and printed matter, the inference of a sale by sample is the one that first comes to mind. But it was not a sale by sample at all. Neither party makes any such claim as that and plaintiff admits by his complaint that it was a contract to print and deliver. But as something was to be printed upon the cards, the question naturally arises, what was it? As already pointed out the written contract throws no light on the question at all. It does not even indicate the business in which defendant was engaged. One who did not know the defendant could no more tell from an inspection of this written contract what his business was or what particular line of business the cards contracted for were designed to advertise than he could read the stars in their courses. The contract does not even afford a clue to the character of the printed matter and illustrations that were to appear upon the cards. If the cards furnished defendant had advertised a saloon business, it could not be said that this was a failure to comply with the contract because there is nothing in the contract to indicate whether it was a saloon business that the cards were to advertise, or a tailoring business, or some other business. The contract is obviously incomplete and to make it intelligible resort must be had to oral proof. Plaintiff's counsel evidently realized this because he went outside the contract for proof to make it intelligible. When he put defendant's business card in evidence and proved that it was handed to plaintiff's agent at the time the contract was made, he was simply trying to cure, in a way, the defect in the contract already referred to by showing the business to which it related. This card tended to throw some light upon the contract because it showed, as the contract did not, the nature of the business in which the de-

fendant was engaged. The delivery of the card was a part of the transaction not embodied in the contract. But when defendant attempted to go further and prove what was said at the time of the delivery of the card respecting the nature of the printed matter that the postal was to contain, the objection was made and sustained that the contract itself was the best evidence on that point. Had the contract specified what the cards should contain, it would of course have been the best evidence of the fact; but as it was absolutely silent on that point it was not only not the best evidence of the fact but no evidence at all. It is quite apparent that something must have been said between plaintiff and defendant as to the nature of the printed matter which the post cards should contain. Plaintiff either received suggestions along that line from defendant or else was authorized by defendant to put on the card whatever in his judgment was suitable and appropriate. In either event, upon the broad principle that the contract was incomplete, defendant should have been permitted to testify to anything that was said between him and plaintiff's agent on the subject of the printed matter to be placed upon the card. The case of Guttentag *v.* Whitney, 79 App. Div. 596, seems to support this view. But, if there were any question as to the admissibility under this rule of the evidence excluded, it seems to me that plaintiff opened the door for its reception when he proved by defendant the delivery of his business card to plaintiff's agent together with the purpose for which it was delivered and the fact that certain printed matter on the same was crossed off.

The statements appearing at the top and the bottom of the contract in large type, to the effect that the Postal Service Company would not be bound by anything not appearing on the face of the contract, do not help the situation any so far as plaintiff is concerned. These statements do not help to make intelligible an otherwise meaningless contract. And as it is perfectly plain that the whole contract between the parties was not expressed in the writing which they signed, it must in order to be made intelligible be supplemented by verbal testimony.

It was, therefore, error to exclude any conversation between plaintiff's agent and defendant as to the character of the printed matter to be placed upon the card and the judgment below must be reversed with costs.

Judgment reversed.